### CROWN HILL RAILWAY COMPANY *v.* ARMSTRONG.

STREET RAILROAD.—*Contributions.*—*Damages.*—Where contributions are made to secure the building of a street railroad, and the regular running of cars thereon a specified number of daily trips, the company receiving such contributions may stipulate that the damages for a failure to comply with these conditions shall be the sum contributed and interest thereon from the date of failure.

SAME.—*Contract.*—*Mutuality.*—*Consideration.*—*Signing.*—Such a stipulation, it was *held,* was not void for want of mutuality, or of consideration, though not signed by the party making the subscription, the obligation on his part being evidenced by his promissory note, previously executed, which was paid by him upon the execution by the company of the instrument containing said stipulation, the company having verbally agreed, at the time of the execution of said note, that the maker, who was interested in the maintenance of the road, should have some security for its permanent working, and the instrument containing said stipulation purporting to be made in consummation of said verbal agreement.

APPEAL from the Marion Circuit Court.

DOWNEY, J.—The appellee sued the appellant, and had judgment against it, from which it appeals to this court. The Crown Hill Railway Company was organized to construct a railroad from the city of Indianapolis to Crown Hill Cem-

etery. On the 31st day of July, 1866, Armstrong, in consideration of the benefits to result to him from the construction of the road, executed to the company two notes, by one of which he promised to pay to the company twenty-five hundred dollars at the commencement of the construction of the road, and by the other he promised to pay to the company a like amount on the running of the cars on the road.

On the 14th day of August, 1866, the following agreement was entered into by and between the said railroad company and the Citizens' Street Railway Company of Indianapolis:

"This agreement, made and entered into this 14th day of August, 1866, between the Crown Hill Railway Company, a corporation organized under the laws of Indiana, party of the first part, and the Citizens' Street Railway Company of Indianapolis, a corporation organized under the laws of Indiana, party of the second part, witnesseth:

"That whereas the party of the first part were organized for the purpose of furnishing a cheap, convenient, and speedy means of access for the citizens of Indianapolis and its vicinity to Crown Hill Cemetery, as well as to accomodate the citizens along and adjacent to the line of their road in travelling to and from the city of Indianapolis, and in aid of their said purpose divers persons in the vicinity of said road have contributed as a donation the sum of ten thousand dollars, and have also granted the right of way on the sole condition that the said road shall be built, suitably stocked, kept in repair, and so operated and run as to afford them reasonable accommodation in travelling to and from the city of Indianapolis;

"Now, therefore, for the purpose of more effectually accomplishing their said purpose; the said party of the first part have resolved to, and have entered into a contract with the said party of the second part, on the terms and conditions following, to wit:

"1st. The party of the first part hereby agrees to construct and complete, at their own cost, within ninety days from this date, according to the plans and specifications for the con-

struction of said road contained in a contract made by and between said Crown Hill Railway Company and Elijah S. Alvord and Calvin Fletcher, a railroad track from the end of the Citizens' Street Railway, at the crossing of Tinker and Illinois streets, in the city of Indianapolis, to the west gateway of Crown Hill Cemetery on the Michigan road, with the necessary spurs and switches suitable for use as a street or horse railroad.

"2d. In consideration of the stipulation hereinafter contained, the party of the first part hereby perpetually lease, free of all charge to the party of the second part forever, their said railroad, to be completed as aforesaid, including the track, grading, iron, and all the structures thereon or pertaining thereto, together with the right of way, the right to use and operate the same, and taking tolls thereon.

"3d. The party of the second part agrees to stock and equip the said road in a manner suitable and sufficient to furnish ample accommodations for all persons desiring to travel on the same, and especially for funerals to Crown Hill Cemetery, and to keep the said road amply stocked and equipped for both purposes; and also to keep the said road in good repair forever; and further, if the party desires at any time to make any changes, additions, or improvements whatever in or upon said road, they shall have the privilege of doing so, but at their own expense; except that this permission shall not include any change in the route of the road as first established, without the written approval of the said Crown Hill Railway Company; and the party of the first part shall in no event be liable for any cost or expense whatever for anything connected with the said road or bridges thereof, its management, operation, change, addition, or improvements, including all taxes, income, or other public charges on the road, after the same shall have been completed and finished as hereinbefore provided for.

"4th. The said road shall be operated by the party of the second part so as to answer all reasonable demands of travel, and accommodate the wants and convenience of persons

residing along and near its line; and to this end, there shall be run not less than six round trips, a day, except that on the Sabbath day not more trips shall be required than reasonably to accommodate the residents near the road in attending church services in the city. Suitable funeral cars shall also be furnished at all reasonable times for funerals.

"5th. The fare or toll for conveying passengers between Tinker street and the gate of Crown Hill Cemetery shall not exceed fifteen cents either way for a single trip, and twenty-five cents for a round trip out or in and back during the same day. Tickets for said round trip, except for funerals, to be furnished and purchased at the office of the company of the second part. The fare for conveying persons attending funerals from any part of the city of Indianapolis whence the funeral is to proceed, used by said street railway company, shall not be more than the established fare for a round trip for conveying other passengers between Tinker street and Crown Hill Cemetery; except the funeral car or car conveying the corpse, the relatives and the pallbearers, to the extent of twenty persons, shall be estimated as containing thirty passengers, and shall be charged at the established rate of fare as containing the number of thirty persons for a round trip; and the fare for persons residing on or near the line of said railway between the Westfield Gravel Road and Michigan Road shall not be more than five cents between Washington street and the said Fall Creek bridge on said railway, and the same fare for persons visiting said grounds.

"6th. And it is further expressly agreed and stipulated that the aforesaid perpetual lease is upon the express condition that the party of the second part shall in all respects keep, perform, and observe all the agreements, contracts, and stipulations by them to be kept, performed, and observed; and that in case they shall fail or neglect to keep, perform, and observe the same, or any one of them at any time for a continuous period of thirty days, unless prevented by providential or unavoidable circumstances, they shall forfeit all

their rights under this contract, and all the property and franchises herein granted to them, and the same shall revert to and become the property of the party of the first part as fully to all intents and purposes as if this contract had never been made; and in such case the party of the first part may, at their discretion, re-enter upon and take possession of all the property, rights, and franchises hereby conveyed.

"7th. It is further mutually agreed by the parties hereto, that if at any future time it shall be discovered, or if it shall be decreed by competent counsel that any other or further conveyances, contracts, or assurances are necessary to carry into full and complete effect the purposes of this contract in good faith, then the same shall be forthwith executed and submitted by the proper party.

"In testimony whereof, the parties have caused these presents to be signed by their respective presidents, and to be attested by their respective seals hereunto attached.

"T. A. MORRIS, President

"Crown Hill Railway Company.

"E. S. ALVORD, President

"Citizens' Street Railway Company.

"W. H. ENGLISH, Treasurer."

On the 8th day of May, 1867, the following agreement, on which the suit is predicated, was executed by and between the Crown Hill Railway Company and John Armstrong and others named therein:

"This agreement, made the 8th day of May, 1867, between the Crown Hill Railway Company, a corporation organized under the laws of the State of Indiana, of the first part, and John Armstrong, W. Clinton Thompson, James W. Green, George H. Chapman, Garrison W. Alred, Langsdale & Buckhart, Joseph Moore, G. Schurmann, and John H. Lozier, of the second part, witnesseth: that, whereas the several individuals who are parties of the second part have subscribed and paid a large amount toward the construction of the Crown Hill Railway, and are interested in maintaining and the successful working of said railway; and whereas

said railway has been and is now completed; and whereas said Crown Hill Railway Company have made a perpetual lease, free of all charges, to the Citizens' Street Railroad Company of Indianapolis, in consideration of certain agreements and stipulations and undertakings of the said Citizens' Street Railroad Company of Indianapolis; and whereas one instalment of said subscription is yet unpaid, and in order to secure the assent of said subscribers to the arrangement with the Citizens' Street Railroad Company of Indianapolis, and because when the subscriptions were made it was understood that the subscribers should have some security for the permanent and constant maintaining and working of said railway; now, therefore, it is agreed that the party of the first part will make no modification or change of contract and perpetual lease heretofore referred to, executed by the party of the first part, with and to the Citizens' Street Railroad Company, from perpetually running said railroad according to their contract with said party of the first part, without the consent of the parties of the second part personally given, or by their authorized agent, or agents, or representatives. And the party of the first part agree also that they will at all times promptly enforce, by all legal means, the said contract existing between them and the Citzens' Street Railroad Company of Indianapolis. And if at any time the party of the first part shall neglect or fail to enforce said contract with the Citizens' Street Railroad Company of Indianapolis, or prosecute for damages for any breach thereof, then the party of the second part, or any part of them, may, in the name of the party of the first part, by all legal means, enforce said contract with the Citizens' Street Railroad Company of Indianapolis, and prosecute the same for damages.

"And it is further agreed, that if at any time the said Crown Hill Railway shall cease to be operated in the same manner as in said agreement named, between the cemetery and the city of Indianapolis, except for such time or times as may be reasonably necessary for proper repairs, then the

second party shall be entitled to recover from said first party the amount that each shall have paid as a donation for the construction of said road, with interest from the date of ceasing to operate the road.

"In witness whereof, the said parties have hereunto set their hands and seals.

"THE CROWN HILL CEMETERY RAILWAY COMPANY,

"By T. A. MORRIS, President."

Armstrong paid off the note which was first to mature, prior to the execution of this last contract, and paid the other one on the 11th day of May, 1867, three days after its execution.

It is alleged in the complaint that the Citizens' Street Railway Company of Indianapolis has not, nor has any other person or company, on their behalf, run cars upon said Crown Hill Railway, or operated it so as to answer all reasonable demands of travel and accommodate the wants and conveniences of persons residing along and near its line, nor have there been six round trips a day, except Sundays, since the 1st day of November, 1867, nor more than three trips a day for one-half of the time since that date, nor more than four trips a day for the other half of the time since that date; so that persons could not pass from one end of the line of the road to the other, or to or from intermediate points of the road by means of the cars, except at long intervals of three or four hours, or return without waiting long intervals of three or four hours, which did not answer the wants or convenience of the persons residing along said road; and that the Citizens' Street Railway Company of Indianapolis was not prevented, during any part of said time, from running more trains of cars, or making more trips, by making necessary or proper repairs. It is also alleged that, in March, 1868, the plaintiff gave the defendant notice in writing of such failure, and that unless the agreement should be complied with, he should insist upon the forfeiture of five thousand dollars, provided for in the contract; and because the defendant wholly neglected to require the contract to be

complied with, the plaintiff, on the 10th day of April, 1868, demanded of the defendant the said sum of five thousand dollars, which it refused to pay. By means whereof the said writing became forfeited, etc.

The defendant pleaded the general denial. Of the issue thus formed there was a trial by a jury, and a general verdict for the plaintiff for five thousand eight hundred and seventy dollars, and also answers to numerous interrogatories, which it is not deemed necessary to copy into this opinion.

The defendant moved the court to grant it a new trial, for excess in the damages, because the verdict is not sustained by sufficient evidence, and is contrary to law. It was also alleged that the court had committed errors of law during the trial of the cause in admitting in evidence the two contracts above set out, and in refusing to admit proper legal material evidence to go to the jury which was offered by the defendant, and to which the defendant excepted. But what particular evidence was thus offered and excluded is not stated. It was also claimed that the court had erred in charging as and for the law that which is not and was not law, relevant to the facts, or material to aid the jury in finding a just and true verdict in said cause, in each and every charge given by said court to the jury, and especially in charging and instructing the jury as he did in each of his charges and instructions numbered two, four, and five given to said jury; in submitting each and every interrogatory requested to be given to the jury; and that the answers to the interrogatories propounded by the court at the instance of the plaintiff, as well as those propounded by the defendant, are not sustained by the evidence, but are contrary thereto.

This motion was overruled by the court, and the defendant then moved in arrest of judgment, for the reasons that the complaint does not state facts sufficient to constitute a cause of action, and because upon the whole record the judgment should be for the defendant for costs, and not for the plaintiff, on the finding of the jury.

This motion was also overruled, and judgment rendered

for the plaintiff for the amount of the verdict. The evidence and instructions are in the record by a proper bill of exceptions.

The assignment of errors presents to this court the question as to the correctness of the action of the court in overruling the motion for a new trial, and that in arrest of judgment.

The brief of the learned counsel for the appellant seems to have been prepared for use in the case while *it* was pending in the common pleas, and hence it does not take up and discuss the points as they are presented by the record and assignment of errors. It is proper for us to consider the questions as they are presented by the assignment of errors.

Of the questions presented by the motion for a new trial, the first is, that the damages are excessive. It was stipulated in the contract sued upon, that "if, at any time, the said Crown Hill Railway shall cease to be operated in the same manner as in said agreement named, between the cemetery and the city of Indianapolis, except for such time or times as may be reasonably necessary for proper repairs, then the second party shall be entitled to recover from said first party the amount that each shall have paid as a donation for the construction of said road, with interest from the date of ceasing to operate the road." This question is not discussed by counsel. The parties made the rule by which the amount of damages should be measured. We think they had the right and power to do so. The damages are no greater than provided for. The interest is to be computed from the time of "ceasing to operate the road." By which is to be understood the ceasing to operate it according to the requirements of the contract.

There is no insufficiency in the evidence to support the verdict of the jury. We have examined it, and it fully justifies the findings and verdict of the jury.

There is no ground for claiming that the verdict is contrary to law.

There was no objection made to the introduction of the

contract between the two companies in evidence, in which the ground of objection was pointed out. This, counsel know, was necessary in order to present the question here. The objection to the introduction of the contract upon which the action is predicated is thus stated: "To the giving of which in evidence, the said defendant at the time objected, for the reason that said agreement was void, and so appeared to be void on its face, for want of consideration; and because it was void for want of mutuality, and so appears, never having been signed or executed by said plaintiff, or any of the other parties of the second part thereto, as by the terms thereof appeared to have been designed and intended by said parties; and because the only consideration therefor was the promise and understanding, therein set forth, of the said parties of the second part, which, upon the face of said paper, did not appear ever to have been assented to by them." This objection the court overruled and allowed the instrument to be read in evidence.

On the question of mutuality, counsel for the appellee submit that this is no valid objection to the validity of the contract. They insist that the same objection might with equal force be made in all suits on promissory notes and bills of exchange, to actions upon the covenants in a deed, in actions on contracts in writing required by the statute of frauds, and in actions upon official bonds; in none of which cases is the instrument executed by the party bringing the action.

It is not doubted but that a contract, to be binding, must be mutual. The minds of the parties must meet and agree upon the same terms or stipulations. A mere proposition from one party, not accepted by the other, can never constitute a contract. But when the parties have made their contract, it is frequently the case that it is reduced to writing and executed on one part only, while the obligation of the other party is not evidenced by any writing signed by him, but rests only in parol. This most frequently occurs where the contract on the part of the party not executing it re-

quires the performance of a single act, as the payment of money, or where that act is performed at the time when the contract is executed by the other party. Where the contract is executed on one part, and executory on the other part only, there seems no necessity for the execution of the instrument by the party who has nothing more to do.

In this case, Armstrong had already paid one of his notes, and was about to pay the other when the contract on which the suit is brought was executed, and he did, in a few days thereafter, pay the other note. This contract, in its recitals, expressly says, that "when the subscriptions were made, it was understood that the subscribers should have some security for the permanent and constant maintaining and working of said railway." The appellant cannot consistently deny the truth of this recital. Armstrong was already bound to pay the money, by his promissory note. This was all that he had to do to fulfil the contract on his part. We do not see why it should be considered necessary for him to sign the contract in question. The promissory note and the agreement in question relate to the same contract, though written and executed at different dates. It is true that it is said in the contract, that it was "understood that the subscribers should have some security," but we must understand this to mean that it was so agreed. Regarding the notes, then, as showing the contract so far as it was to be performed by the parties making the donations, and the contract sued upon as showing the contract on the part of the defendant, all relating to and being evidence of the same transaction, we see no ground for the objection of want of mutuality.

As to the objection that there is no consideration, it might be sufficient, perhaps, to say that there is no answer setting up the defence. But we think a sufficient consideration clearly appears. Armstrong was interested in the making of the road, and in its being kept in use. He agreed to pay five thousand dollars toward its construction, and the company agreed to give him some security for the performance of the contract on its part by keeping up the road. When

he had paid one of his notes, and was about to pay the other, the company gave him the instrument in question as the promised security, and to show the agreement on its part. He then paid the remaining note. It seems to us that the objection, so far as this ground is concerned, has nothing in it. The instrument on its face, and by its recitals, which are binding on the company, showed a sufficient consideration. We think the court committed no error in admitting the contract in evidence.

The objection to the instructions given raises no question other than those already disposed of.

As to the objection that the court erred in submitting the interrogatories to the jury, we think it sufficient to say that no question is made upon the answers made by the jury to the interrogatories by either party, and that, therefore, the interrogatories could have done the defendant no harm.

The complaint was sufficient. There was no reason, therefore, for arresting the judgment for the insufficiency of the complaint. Nor can we see that upon the whole record judgment should have been for the defendant for costs; and not for the plaintiff for the amount of the verdict.

The judgment is affirmed, with two per cent. damages and costs.

*J. W. Gordon, T. M. Browne, R. N. Lamb, J. E. McDonald, J. M. Butler,* and *E. M. McDonald,* for appellant.

